# 22-2908-cv(L), 22-2972-cv(CON)

## United States Court of Appeals

*for the*

## Second Circuit

———————————

IVAN ANTONYUK, COREY JOHNSON, ALFRED TERRILLE, JOSEPH MANN, LESLIE LEMAN, LAWRENCE SLOANE,

*Plaintiffs-Appellees,*

– v. –

STEVEN A. NIGRELLI, IN HIS OFFICIAL CAPACITY AS ACTING SUPERINTENDENT OF THE NEW YORK STATE POLICE, MATTHEW J. DORAN, IN HIS OFFICIAL CAPACITY AS THE LICENSING OFFICIAL OF ONONDAGA COUNTY, JOSEPH CECILE, IN HIS OFFICIAL CAPACITY AS THE CHIEF OF POLICE OF SYRACUSE,

*Defendants-Appellants.*

KATHLEEN HOCHUL, IN HER OFFICIAL CAPACITY AS THE GOVERNOR OF THE STATE OF NEW YORK, WILLIAM FITZPATRICK, IN HIS OFFICIAL CAPACITY AS THE ONONDAGA COUNTY DISTRICT ATTORNEY, EUGENE CONWAY, IN HIS OFFICIAL CAPACITY AS THE SHERIFF OF ONONDAGA COUNTY, P. DAVID SOARES, IN HIS OFFICIAL CAPACITY AS THE DISTRICT ATTORNEY OF ALBANY COUNTY, GREGORY OAKES, IN HIS OFFICIAL CAPACITY AS THE DISTRICT ATTORNEY OF OSWEGO COUNTY, DON HILTON, IN HIS OFFICIAL CAPACITY AS THE SHERIFF OF OSWEGO COUNTY, JOSEPH STANZIONE, IN HIS OFFICIAL CAPACITY AS THE DISTRICT ATTORNEY OF GREENE COUNTY,

*Defendants.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLANT JOSEPH CECILE

CITY OF SYRACUSE
OFFICE OF THE CORPORATION COUNSEL
Todd M. Long, Esq.
Danielle R. Smith, Esq.
*Attorneys for Defendant-Appellant Joseph Cecile*
233 East Washington Street, 300 City Hall
Syracuse, New York 13202
(315) 448-8400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT .......................................................1

PRELIMINARY STATEMENT ...........................................................1

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ............................2

STATEMENT OF THE CASE ...........................................................3

SUMMARY OF THE ARGUMENT ......................................................5

STANDARD OF REVIEW ...............................................................6

ARGUMENT .............................................................................8

I.  The District Court Erred in Finding Plaintiff Johnson had Standing Against Chief Cecile ..............................................................8

II.  The District Court Erred in Finding Plaintiff Johnson Would Suffer Imminent and Irreparable Harm ..............................................16

  A.  The District Court Erred in Assuming Plaintiff Johnson was a City Resident ......................................................................17

  B.  The District Court Erred in Finding Plaintiff Johnson Would Suffer Irreparable Harm with Respect to the Rosamond Zoo ..........................19

III.  The District Court Erred in Finding Plaintiff Johnson Established a Likelihood of Success on the Merits .........................................22

  A.  The District Court Erred in Finding a Cognizable Nexus Between Plaintiff Johnson and Chief Cecile ......................................................22

  B.  The District Court Erred in Failing to Consider that the Rosamond Gifford Zoo Contains Government Buildings and is an Educational Facility .....22

  C.  Chief Cecile Adopts the Arguments Raised by the State Defendants.....24

IV.   The Trial Court Erred in Finding the Balance of Equities and Service of Public Interest Favor Plaintiffs ...................................................................24

CONCLUSION .......................................................................................25

CERTIFICATE OF COMPLIANCE .......................................................26

## TABLE OF AUTHORITIES

**Cases**

*Ali v. Wuchte*, 2022 WL 3682303 (E.D.N.Y. Aug. 25, 2022) ..................................19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................................10

*Antonyuk v. Hochul*, No. 122CV0986GTSCFH, 2022 WL 16744700 (N.D.N.Y. Nov. 7, 2022)........................................................................................................5

*Antonyuk v. Hochul*, No. 122CV0986GTSCFH, 2022 WL 5239895 (N.D.N.Y. Oct. 6, 2022) .......................................................................................................4

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979)........................11

*Cacchillo v. Insmed, Inc.*, 638 F.3d 401 (2d Cir. 2011) ................................ 8, 9, 10

*Carver v. City of New York*, 621 F.3d 221 (2d Cir. 2010).........................................8

*Cayuga Nation v. Tanner*, 824 F.3d 321 (2d Cir. 2016)..........................................10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .........................................................9

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ..................................................16

*D.C. v. Heller*, 554 U.S. 570 (2008) .......................................................................23

*Demirayak v. City of New York*, 746 Fed. App'x 49 (2d Cir. 2018) ......................16

*Does 1 - 10,* 2022 WL 2678876 (2d Cir. July 12, 2022) ............................. 9, 10, 12

*Dorce v. City of New York*, 2 F.4th 82 (2d Cir. 2021)............................................10

*Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009) ......16

*Frey v. Bruen*, 2022 WL 522478 (S.D.N.Y. Feb. 22, 2022) ...................................11

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ............................................. passim

*Lujan v. Nat'l Wildlife Fed'n (Lujan I)*, 497 U.S. 871 (1990) ..................................9

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)..............................................................7

*Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152 (2d Cir. 2010)......7

*Munaf v. Geren*, 553 U.S. 674 (2008) ........................................................................6

*New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638 (2d Cir. 2015).........7

*People's United Bank v. PeoplesBank*, 401 F. App'x 607 (2d Cir. 2010) ...............7

*Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022) ......................................................10

*Rodriguez v. DeBuono*, 175 F.3d 227 (2d Cir. 1999) ..............................................16

*Sibley v. Watches*, 501 F. Supp. 3d 210 (W.D.N.Y. Nov. 16, 2020)......................12

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)..............................................8, 9

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).......................................11

*Sussman v. Crawford*, 488 F.3d 136 (2d Cir. 2007) ..................................................7

*Tolbert v. Koenigsmann*, 2015 WL 7871344 (N.D.N.Y. Dec. 4, 2015)..................16

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995) ..........7

*Ulmer v. Corr. Officer Dibble*, 2016 WL 5940912 (N.D.N.Y. Oct. 13, 2016).......19

*We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) .......................24

*Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .................................6, 7

**Statutes**

28 United States Code § 1292................................................................................1

28 United States Code § 1331................................................................................1

New York Penal Law § 265.01-d ..........................................................................5

New York Penal Law § 265.01-e...........................................................................5

iv

**Rules**

Federal Rules of Appellate Procedure, Rule 28......................................................24

Federal Rules of Appellate Procedure, Rule 4........................................................1

## JURISDICTIONAL STATEMENT

This action was brought pursuant to 42 U.S.C. § 1983 alleging violations of the First, Second, Fifth and Fourteenth Amendments to the United States Constitution. The district court possessed original jurisdiction pursuant to 28 U.S.C. § 1331.

United States District Judge Glenn T. Suddaby issued a Decision and Preliminary Injunction on November 7, 2022. Defendant-Appellant Joseph Cecile ("Chief Cecile") timely filed a Notice of Appeal on November 18, 2022. Fed. R. App. P. 4. This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

## PRELIMINARY STATEMENT

The City of Syracuse ("City"), like many municipalities in the State of New York, has recently lived under the morbid pall of a firearm proliferation, which has plagued its residents and ravaged the prospect of safe enjoyment by its visitors. The City has therefore taken legal action to limit firearm use within its borders as violence and insecurity from firearms has been on a seemingly unstemmable rise.[1] *See City of Syracuse, NY, et al. v. Bureau Of Alcohol, Tobacco, Firearms And Explosives, et al.*, 1:20-cv-06885-GHW (S.D.N.Y. 2020); *see also Division 80, LLC*

---

[1] The City's municipal parties have also taken legal action. *See The City of Rochester v. Smith & Wesson Brands Inc., et al.*, Index. No. E2022010581 (Erie County Sup. Ct. 2022); *The City of Rochester v. Smith & Wesson Brands Inc., et al.*, Index. No. 815602/2022 (Erie County Sup. Ct. 2022).

*v. Merrick Garland*, 3:22-cv-00148 (S.D.T.X. 2022) (City as *Amicus Curiae*). Indeed, the City has a history of firearm regulation that goes back to at least 1894, when it was the City's chief of police who was "authorized to issue permits [to carry pistols in the City] for such purpose, in proper cases." JA485.

In order to abate gun violence, the City needs laws to enforce and limit the proliferation of firearms in places where the public deserves to feel safe. In 2022 alone—according to Onondaga County Crime Analysis Center data—there were 757 shots fired incidents in the City, 166 of which resulted in known injury or fatality. These incidents are in places where the public congregate and have an expectation of a location free of firearms; from the historic business districts of Armory and Hanover Squares to parks such as Kirk Park—each of which had shootings resulting in injury or death in 2022. The Concealed Carry Improvement Act ("CCIA") is a critical tool in the City's ability to protect its citizens.

For the following reasons, Chief Cecile, Chief of Police for the Syracuse Police Department ("SPD"), respectfully submits that Plaintiffs failed to meet their burden warranting preliminary injunctive relief.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

1.     Whether the District Court erred in finding Plaintiff Johnson had standing and met his burden for establishing preliminary injunctive relief as to Defendant Joseph Cecile.

## STATEMENT OF THE CASE

Plaintiffs initiated the instant 42 U.S.C. § 1983 ("Section 1983") action on September 20, 2022, by filing a complaint in the Northern District of New York ("Complaint"). JA17-89. Plaintiffs asserted claims under the First, Second, Fifth and Fourteenth Amendments to the United States Constitution. JA82-88.[2] In sum and substance, Plaintiffs challenged nearly all the provisions of the CCIA. JA17-89. Plaintiffs named Kathleen Hochul, in her official capacity as Governor of the State of New York ("Governor Hochul"), Kevin P. Bruen, in his official capacity as Superintendent of the New York State Police ("Superintendent Bruen") and Judge Matthew J. Doran, in his Official Capacity as the licensing-official of Onondaga County ("Judge Doran") as defendants. JA17. Plaintiffs also named elected and appointed officials from various cities and counties within New York as defendants, including Chief Cecile. JA17.

Plaintiff Corey Johnson ("Plaintiff Johnson"), who did not identify as a resident of the City, was the sole plaintiff to allege a nexus with Chief Cecile or the City. JA134-42. The City and Chief Cecile are mentioned only twice in Plaintiff Johnson's declaration in support of the Complaint; namely: 1) in connection with the Rosamond Gifford Zoo ("Rosamond Zoo") located within the City (JA139-40); and 2) in reference to a press conference Chief Cecile attended with co-defendant

---

[2] "JA" refers to the Joint Appendix. "SA" refers to the Special Appendix.

Onondaga County ("County") District Attorney William Fitzpatrick ("DA Fitzpatrick") (JA141). Plaintiff Johnson did not name any other businesses or locations he intended to visit within the City. *See* JA140 (asserting that Plaintiff Johnson will visit unnamed retail locations within *the County*); *see also* SA66 (the District Court was "persuaded" that "no Longhorn Steakhouses exist in the City"). In addition to the Complaint, Plaintiffs also requested a Preliminary Injunction enjoining enforcement of the CCIA ("Plaintiffs' Motion").[3] JA197-98.

The crux of Chief Cecile's opposition to Plaintiffs' Motion was the speculative and tenuous nature of the connection between Plaintiff Johnson, the City and Chief Cecile. As set forth in Chief Cecile's response to Plaintiffs' Motion, Plaintiff Johnson's allegations neither support nor warrant emergency injunctive relief against Chief Cecile. This was especially true given the sole City location Plaintiff Johnson identified, the Rosamond Zoo (JA139), was a County-owned property with its own police force not under the jurisdiction of the City or Chief Cecile (JA218; JA221; JA224; JA227).

---

[3] Plaintiffs' Motion included a request for a Temporary Restraining Order ("TRO"), which was granted, in part. *See Antonyuk v. Hochul*, No. 1:22-CV-0986 (GTS/CFH), 2022 WL 5239895 (N.D.N.Y. Oct. 6, 2022). Governor Hochul, Superintendent Bruen, Judge Doran and Chief Cecile appealed the TRO. The TRO appeal was effectively rendered moot by the District Court's Decision on the preliminary injunction. The parties voluntarily dismissed the TRO appeal.

4

Following briefing and oral argument, District Judge Glenn T. Suddaby granted Plaintiffs' motion for a Preliminary Injunction, in part ("Decision"). SA1-184; *see also Antonyuk v. Hochul*, No. 1:22-CV-0986 (GTS/CFH), 2022 WL 16744700 (N.D.N.Y. Nov. 7, 2022). As relevant here, the District Court found Plaintiff Johnson had standing to challenge the following two CCIA provisions as against Chief Cecile: 1) zoos (Penal Law § 265.01-e(2)(d)); and, 2) restricted locations, namely "gas stations, grocery stores, home improvement stores, [and] big box stores,"[4] (Penal Law § 265.01-d(1)); SA44; SA83-85. Chief Cecile filed a notice of appeal on November 18, 2022. JA792-94.

For the following reasons, Chief Cecile respectfully submits that the District Court's findings are factually and legally unsupported.

## SUMMARY OF THE ARGUMENT

At the outset, Chief Cecile submits Plaintiff Johnson, the sole Plaintiff to allege any connection with the City, lacks standing for a preliminary injunction. First, Plaintiff Johnson's reliance on Chief Cecile's vague press conference statements, coupled with Second Circuit precedent, do not establish standing. *See infra*, Argument I.

---

[4] Plaintiff Johnson's declaration includes other named and unnamed locations he intends to visit. He did not claim that any of these locations were within the City. *See generally*, JA134-42.

5

Secondly, Plaintiffs have failed to meet their burden to warrant a preliminary injunction, particularly the *irreparable harm* element. The *only* identified City location Plaintiff Johnson intends to visit, the Rosamond Zoo, is owned and controlled by the County with its own police force. Thus, contrary to the District Court's Decision, it is not "likely" that Plaintiff Johnson will suffer an immediate irreparable harm by Chief Cecile. *See infra*, Argument II.A.

Furthermore, there is no evidence alleging – let alone establishing – that Plaintiff Johnson is a City resident. Accordingly, Plaintiff Johnson's allegation that he intends to violate the CCIA at unnamed retail locations within the County, which encompasses far more than the City, does not support the District Court's finding that Plaintiff Johnson will suffer an irreparable harm within the City. *See infra*, Argument II.B.

Finally, the District Court failed to consider Chief Cecile's argument that the Rosamond Zoo contains governmental buildings as well as elements of an educational facility, where the Supreme Court permits firearm regulation. *See infra*, Argument III.B.

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)). Indeed, "[a] preliminary injunction is an

extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted). There is a heightened standard placed upon the moving party seeking a preliminary injunction when either: "(i) an injunction is 'mandatory,' or (ii) the injunction 'will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.'" *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995)).

"This Court reviews the grant of a preliminary injunction for abuse of discretion." *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010) (citations omitted). "A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law." *People's United Bank v. PeoplesBank*, 401 F. App'x 607, 608 (2d Cir. 2010) (citations and internal quotations omitted).

## ARGUMENT

I. **The District Court Erred in Finding Plaintiff Johnson had Standing Against Chief Cecile**

The Complaint and Plaintiff Johnson's declaration both reference the same press conference news article in support of Plaintiffs' argument that Chief Cecile should be enjoined from enforcing the CCIA. JA24; JA141. According to the article, "[l]aw enforcement won't be proactively enforcing the new law by trying to catch legal gun-owners in prohibited locations, Syracuse Police Chief Joseph Cecile said. 'It will be complaint-driven,' the chief said.'" JA37 Exhibit 6. For the following reasons, Chief Cecile respectfully submits that his comments at a press conference fall far short of establishing Plaintiff Johnson's standing.

Generally, "[s]tanding is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010)). In particular, "a plaintiff must demonstrate standing for each claim and form of relief sought." *Cacchillo*, 638 F.3d at 404 (quoting *Baur v. Veneman*, 352 F.3d 625, 642, n. 15 (2d Cir. 2003)). "Thus, in order to seek injunctive relief, a plaintiff must show the three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo*, 638 F.3d at 404 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009)). Stated more specifically, to establish standing when seeking injunctive relief, a plaintiff must allege: (1) he has suffered an injury in fact which

8

is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) there is "a causal connection between the injury and the conduct complained of," and (3) it is likely "that the injury will be redressed by a favorable decision." *Does 1 – 10 v. Suffolk Cnty., New York,* 2022 WL 2678876, at *2 (2d Cir. July 12, 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

A plaintiff's burden to demonstrate standing increases over the course of litigation. *Cacchillo*, 638 F.3d at 404 (citing *Lujan*, 504 U.S. at 561). "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id*. The plaintiff "bears the burden of showing that he has standing for each type of relief sought," including injunctive relief. *Does 1 - 10*, 2022 WL 2678876, at *2 (quoting *Summers*, 555 U.S. at 493). When a preliminary injunction is sought, a plaintiff's burden to demonstrate standing "will normally be no less than that required on a motion for summary judgment.[5]" *Cacchillo*, 638 F.3d at 404 (emphasis supplied) (quoting *Lujan v. Nat'l Wildlife Fed'n (Lujan I)*, 497 U.S. 871, 907, n. 8 (1990)).

---

[5] Summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Id.* at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the

9

Accordingly, to establish standing for a preliminary injunction, a plaintiff cannot "rest on such 'mere allegations,' [as would be appropriate at the pleading stage] but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Cacchillo*, 638 F.3d at 404 (quoting *Lujan*, 504 U.S. at 561).

While pre-enforcement challenges, such as has been alleged here by Plaintiff Johnson, they are "cognizable under Article III" *Does 1 - 10*, 2022 WL 2678876, at *2 (quoting *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016)), to establish standing for a pre-enforcement challenge, an "allegation of future injury will be sufficient only if 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Id.* (quoting *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021)). In applying this standard, Courts have found that "[f]ears of prosecution may not, for instance, be 'imaginary or speculative.'" *Id*. (quoting *Vance*, 802 F.3d at 384). "Further, the imminence requirement is not evident where plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." *Id.* (internal quotations omitted); *see also Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022) (quoting *Cayuga Nation*, 824 F.3d at 331) (holding that "'[t]he

_____

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

identification of a credible threat sufficient to satisfy the imminence requirement . . . necessarily depends on the particular circumstances at issue," and "will not be found where plaintiffs do not claim that they have ever been threatened with prosecution, that prosecution is likely, or even that a prosecution is remotely possible.'").

Finally, to show that the plaintiff "inten[ds] to engage in a course of conduct arguably affected with a constitutional interest," the plaintiff is not required "to confess that [they] will in fact violate the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163 (2014) (citing *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 301 (1979)). However, "'some day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564 (emphasis in original); *see Frey v. Bruen*, 2022 WL 522478, at *4 (S.D.N.Y. Feb. 22, 2022) (court finding no standing at preliminary injunction stage in firearms case based on "no concrete plans to violate the New York Penal Laws" and plaintiffs' failure to allege "a credible threat of prosecution").

In *Frey v. Bruen*, 2022 WL 522478 (S.D.N.Y. Feb. 22, 2022), the plaintiffs were licensed gun owners who sought to remove New York State restrictions on their concealed carry permits, receive a license to carry concealed in New York City, and openly carry handguns throughout New York State. *Id*. at *2-3. "Each Plaintiff

11

intend[ed] to violate the limitations of their handgun licenses." *Id*. at *3. In denying their request for a preliminary injunction, the district court held that the plaintiffs lacked standing because they had not alleged an actual injury or imminent threat of prosecution. *Id*. at *5-6. The plaintiffs' claims that they "intend[ed]" to violate the limitations on their licenses was insufficient. *Id*. at *5 (citing *Lujan*, 504 U.S. at 564). The plaintiffs also failed to allege a credible threat of prosecution to themselves individually because they did not establish "any facts showing that they have been prosecuted in the past or have been threatened with enforcement of any of the statutes they are challenging." *Id*. at *5. The mere existence of a law under which the plaintiffs could theoretically have been prosecuted was insufficient to grant them standing in the absence of actual enforcement or threat of prosecution. *Id*. at *5 (emphasis supplied) (citing *Sibley v. Watches*, 501 F. Supp. 3d 210, 218 (W.D.N.Y. Nov. 16, 2020)).

The recent decision of this Court in *Does 1 - 10 v. Suffolk County, New York*, is even more illustrative as to Plaintiff Johnson's lack of standing. *See id.*, 2022 WL 2678876, at *1. The plaintiffs were each purchasers of a Delta Level Defense CT4-2A firearm. *See id.* at *1. The plaintiffs had received letters from the Suffolk County Police Department which informed them that possession of said firearm was unlawful under New York law, requested the firearm be presented to police, and stated they could be subject to arrest and/or prosecution for failure to comply.

*Id*. The district court dismissed the plaintiffs' complaint and denied their request for a preliminary injunction for lack of standing. *Id*. at *2. In affirming the district court's dismissal, the Second Circuit held that the plaintiffs had not suffered an injury in fact because they had not been arrested or had the firearms at issue confiscated and therefore had not established a likelihood of prosecution. *Id*. at *3.

Here, there is only but a mere *allegation* of a future injury as to Plaintiff Johnson within the Plaintiffs' collective Complaint, which fails to meet the standard espoused by the Supreme Court for a preliminary injunction. *See* JA64-65. Plaintiff Johnson's sworn statement, his only demonstrable evidence, is bereft of any specific facts as to any actual damages suffered or risked by going to the Rosamond Zoo—the only location alleged with any (barely) cognizable nexus to Chief Cecile. *See*, *generally*, JA134-42; *see also*, *infra* Argument II.B. Instead, Plaintiff Johnson has one paragraph devoted to his anticipatory sojourn to the Rosamond Zoo and one paragraph as to his understanding of Chief Cecile's statement in a news article covering a press conference. *See*, *generally*, JA139-41. Neither of these declaratory statements pass this entry level element in the test for standing in a preliminary injunction.

In paragraph "17" of his declaration, Plaintiff asserts that "CCIA makes it a crime to possess a firearm at a zoo," and that he is going to "visit the zoo this fall as well, at least once, within the next 90 days . . . [and] . . . intend[s] to carry" his

firearm there. JA139-40. Thereafter in paragraph "23," Plaintiff Johnson avers in a speculatory fashion that Chief Cecile's mere presence at a press conference discussing CCIA would result in injury in fact "[i]n other words, the top law enforcement officials where I live have expressed a specific intent to enforce the provisions of the CCIA against violators, which might include having a firearm seized by police and a carry license revoked." JA141. In reality, Chief Cecile's statement was the opposite. Chief Cecile stated he "would enforce the CCIA on a 'complaint driven' basis." JA24.[6] As a result, Plaintiff Johnson cannot and does not affirm Chief Cecile made any "concrete and particularized" statement to the general public regarding the imminence of anyone's arrest, let alone that Plaintiff Johnson himself would actually or imminently be harmed (by arrest or other means) if he went to the Rosamond Zoo with his concealed firearm. *See* JA141. Moreover an expression to visit the Zoo "at least once, within the next 90 days" (JA139-40) during the entire season of fall is hardly concrete and particularized to overcome anything more than a "some day" intention, which cannot support a finding of the 'actual or imminent' injury that the Supreme Court has required. *See Lujan*, 504 U.S. at 564 ("without any description of concrete plans, or indeed even any specification of

---

[6] This is the only paragraph in the entirety of the Complaint that Chief Cecile is individually identified. He is not identified in any of the sections specific to Plaintiff Johnson. *See* JA63-65.

*when* the some day *will be*—do not support a finding of the "actual or imminent" injury. . .) (emphasis supplied).

It is completely speculative for Plaintiff Johnson to assert that his injury in-fact would be from Chief Cecile solely based on Chief Cecile's statement that he "would enforce the CCIA on a 'complaint driven' basis." JA24.[7] For Plaintiff Johnson to incur actual harm he would actually have to travel to the Rosamond Zoo carrying his concealed firearm, be involved in an incident, have someone lodge a complaint with Chief Cecile, rather than the police force charged in the first instance with responding to incidents at the Rosamond Zoo, and then either be arrested or have his firearm seized. Thus, like the plaintiffs in *Frey v. Bruen* and *Does 1-10 v. Suffolk County*, Plaintiff Johnson has not articulated actual injury or imminent threat of prosecution causally descending from Chief Cecile. Thus, there is a causal chasm that Plaintiff Johnson cannot close. Instead, Plaintiff Johnson relies on the mere existence of the CCIA and a brief generic statement by Chief Cecile to infer theoretical prosecution, which is patently insufficient. Plaintiff Johnson has simply failed to establish standing.

Plaintiff Johnson has failed to establish he has been threatened with certain confiscation of his firearm, revocation of his license, or prosecution pursuant to the

---

[7] This is the only paragraph in the entirety of the Complaint that Chief Cecile is individually identified. He is not identified in any of the sections specific to Plaintiff Johnson. *See* JA63-65.

CCIA if he goes to the Rosamond Zoo with his concealed firearm. Nor has he demonstrated that the initiation of an arrest on the County-owned property will be by an SPD officer pursuant to the dictates of Chief Cecile. *See infra*, Argument II.B. As such, Plaintiff Johnson does not have standing to bring this pre-enforcement action against Chief Cecile.

Chief Cecile therefore respectfully submits that the District Court erred in finding that Plaintiff Johnson had standing against Chief Cecile.

## II. The District Court Erred in Finding Plaintiff Johnson Would Suffer Imminent and Irreparable Harm

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)); *see also Demirayak v. City of New York*, 746 Fed. App'x 49, 51 (2d Cir. 2018). "Speculative, remote or future injury is not the province of injunctive relief." *Tolbert v. Koenigsmann*, 2015 WL 7871344, at *2 (N.D.N.Y. Dec. 4, 2015) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)). Rather, "Plaintiffs must demonstrate that absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)).

16

For the following reasons, Chief Cecile respectfully submits that the District Court erred in finding Plaintiff Johnson would suffer an irreparable harm with respect to unnamed retail locations within the County and the Rosamond Zoo.

## A. The District Court Erred in Assuming Plaintiff Johnson was a City Resident

Plaintiff Johnson does not claim to be a resident of the City. Rather, his declaration asserts only that he "live[s] in Onondaga County." JA135. The Complaint similarly asserts that Plaintiff Johnson "resides in Onondaga County." JA18. Nevertheless, the District Court *assumed* that Plaintiff Johnson was a City resident based on Plaintiff Johnson's reference to Chief Cecile and DA Fitzpatrick as "the top law enforcement officials where [he] live[s]." SA84, n.69; *see also* SA66, n.49 (noting that Plaintiff Johnson "lives in the City," and indeed as a resident of the greater County of Onondaga DA Fitzpatrick would be a top law enforcement official with countywide jurisdiction). In rendering this finding, the District Court asserted that it was "taking Plaintiffs at their word." *See* SA83. However, Plaintiff Johnson's "word," to use the Court's phrasing, was that he was a resident of the County. Plaintiff Johnson did not claim to be a resident of the City. Respectfully, the District Court did not take Plaintiff Johnson's residency at his "word."

The Court's assumption permitted the Court to further find that Plaintiff Johnson had standing to challenge various CCIA "restricted locations" in the City. Plaintiff Johnson claimed that he "go[es] shopping at various locations in Onondaga

17

County, such as gas stations, grocery stores, home improvement stores, big box stores, etc." JA140. Plaintiff Johnson did not assert that any of these shopping locations were within the City or otherwise under the purview of Chief Cecile.[8] Chief Cecile therefore argued in opposition to Plaintiffs' Motion that such unnamed locations within the greater Onondaga County[9] were far too vague to warrant the "extreme remedy" of a preliminary injunction as against Chief Cecile.

However, based on the *assumption* that Plaintiff Johnson was a City resident, the Court *inferred* that the unidentified "gas stations, grocery stores, home improvement stores, [and] big box stores" *could* be located within the City and therefore under Chief Cecile's purview. SA83. Ultimately, the District Court's finding that Plaintiff Johnson had standing to challenge restricted locations in the County against Chief Cecile is based on assumptions and speculation.[10] Respectfully, the District Court's analysis is far too speculative to meet the burden espoused by this and other courts to justify a finding of irreparable harm.

---

[8] Again, the only City location Plaintiff identified was the Rosamond Zoo.

[9] Insofar as it is necessary, Chief Cecile asks this Court to take judicial notice of the fact that the City, a municipal corporation, sits within the borders of the County, along with 19 other separate, distinct, and autonomous townships (as well villages) and the autonomous Onondaga Nation of the Haudenosaunee Confederacy. These locations noted in Plaintiff Johnson's generic affidavit could be in any one of those 19 towns, various villages, or the Onondaga Nation.

[10] Assuming *arguendo*, that Plaintiff Johnson is a City resident, the fundamental issue remains − Plaintiff Johnson *did not* claim that any of the retail locations he intends to visit are within the City. Rather, he claims only that the retail are within *the County*, which again, encompasses far more than the City. JA140.

This Court, and its various district courts, have repeatedly held that irreparable harm requires plaintiffs to "demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent." *Faiveley*, 559 F.3d at 118 (quoting *Grand River*, 481 F.3d at 66); *see also Ulmer v. Corr. Officer Dibble*, 2016 WL 5940912, at *2 (N.D.N.Y. Oct. 13, 2016) ("Preliminary injunction requests are 'frequently denied if the affidavits [in support of the motion] are too vague or conclusory to demonstrate a clear right to relief under Rule 65.'"); *Ali v. Wuchte*, 2022 WL 3682303, at *2 (E.D.N.Y. Aug. 25, 2022) ("Conclusory allegations lacking supporting evidence are insufficient to sustain a request for a preliminary injunction."). Here, Plaintiff Johnson has not identified a single retail location within the City that he intends to visit. In fact, the only location within the City Plaintiff Johnson has identified where he might visit at some point in the future, is policed in the first instance by a County police force. Chief Cecile therefore respectfully submits that Plaintiff Johnson has failed to establish by a "clear showing," that he will suffer an "actual and imminent" injury by Chief Cecile.

## B. The District Court Erred in Finding Plaintiff Johnson Would Suffer Irreparable Harm with Respect to the Rosamond Zoo

Chief Cecile argued in his opposition to the Plaintiffs' Motion that the Rosamond Zoo, although located in the City, is not a City-owned zoo. *See* JA248 (declaration of the Commissioner of the Department of Parks, Recreation & Youth Programs explaining that the Rosamond "Zoo is not owned, controlled, or operated

19

by the City"). Rather, the Rosamond Zoo is owned and controlled by the County with its own police force (County Park Rangers). *See* JA217 (property description identifying the County as owner); JA221 (property map identifying the County as owner); JA224 (County website listing the Rosamond Zoo as a County Park); JA226-30 (County website discussing Park Ranger). The District Court accepted Chief Cecile's argument finding the Rosamond Zoo was "owned by Onondaga County and not the City of Syracuse." SA43. The District Court further acknowledged that "some uncertainty appears to exist regarding whether [a protective mother's] 911 call" for a CCIA violation at the Rosamond Zoo "would result in the dispatching of a Syracuse Police Officer or a County Deputy Sherriff." SA43. Nevertheless, the District Court held that Plaintiff Johnson had standing to challenge this aspect of the CCIA. SA43-44. The District Court found it "likely" that Plaintiff Johnson would suffer a consequence from SPD "regardless of whether Plaintiff Johnson were discovered to be in violation of this regulation while inside the zoo, in the zoo's parking lot, or walking to the zoo (through Burnet Park)." SA44. Once again, the District Court's finding compounds speculation on speculation.

At the outset, the District Court's reference to "walking to the zoo (through Burnet Park)" inappropriately adds facts and allegations to the Complaint which effectively enhance Plaintiff Johnson's irreparable harm argument by referencing another City property. *See* SA43 (noting that Burnet Park is "a city park"). However,

Plaintiff Johnson never claimed he intends to walk to the Rosamond Zoo. Rather, as evidenced by the actual record, Plaintiff Johnson resides in the County, not the City, and therefore the logical inference is he would drive, not walk, to the zoo. Further, and reflective of the foregoing, Plaintiffs did not mention Burnet Park in the Complaint, or their respective declarations, let alone claim they intend to visit Burnet Park. Notably, the District Court *did not* find Plaintiff Johnson had standing to challenge the CCIA against Chief Cecile with respect to "public parks." SA45 ("Plaintiff Johnson has standing to challenge this regulation as it regards 'public parks,' and that Defendants Conway, Fitzpatrick and Nigrelli are proper Defendants to that challenge"). Accordingly, the record does not support the District Court's findings regarding Burnet Park, as evidenced by the Decision itself.

Further compounding the speculative analysis is the District Court's acknowledgement that "some uncertainty appears to exist regarding whether" SPD or a County Sherriff would respond to a CCIA violation at the Rosamond Zoo. It is clear from all of the case law, a preliminary injunction requires a "clear showing" of imminent and irreparable harm by Plaintiffs. *Mazurek*, 520 U.S. at 972. "Uncertainty" is the antithesis of a "clear showing." *See Stern v. Shulkin*, 2019 WL 6895417, at *4 (N.D.N.Y. Dec. 18, 2019) (finding the plaintiff had failed to establish irreparable harm, in part because "[t]his uncertainty is exactly the type which makes Plaintiff's claimed injury speculative").

Ultimately, Plaintiff Johnson is alleging irreparable harm based on the theory that when visiting the Rosamond Zoo in the future, he *may* be discovered with a firearm in violation of the CCIA, someone *may* in turn complain to the police and SPD, rather than the zoo's dedicated police force, *may* respond. Respectfully, this "uncertainty," to use the District Court's phrasing, is far too speculative to justify the extraordinary emergency relief Plaintiffs seek.

**III. The District Court Erred in Finding Plaintiff Johnson Established a Likelihood of Success on the Merits**

**A. The District Court Erred in Finding a Cognizable Nexus Between Plaintiff Johnson and Chief Cecile**

As previously stated, Plaintiff Johnson has not identified any locations in the City controlled by Chief Cecile where he intends to violate the CCIA by bringing a concealed weapon. *See supra*, Argument II. Nor do Chief Cecile's statements at the press conference establish a likelihood that Plaintiff Johnson's rights will be violated. *See supra*, Argument I. Accordingly, Plaintiff Johnson has not demonstrated any harm, imminent, irreparable, or otherwise, that would warrant success on the merits.

**B. The District Court Erred in Failing to Consider that the Rosamond Gifford Zoo Contains Government Buildings and is an Educational Facility**

Chief Cecile argued in his opposition papers that the Rosamond Zoo was more than simply a "zoo" and enjoyed additional protections as a "sensitive location."

22

First, the Zoo is owned and operated primarily by a government entity, the County. *See, generally,* JA218; JA221; JA224; JA248. Presumably, the Rosamond Zoo contains County building(s), such as those housing the Park Rangers assigned to the Rosamond Zoo. *See* JA227. Second, the Rosamond Zoo operates, in part, as an educational facility. As referenced in Chief Cecile's opposition to Plaintiffs' motion, the Rosamond Gifford Zoo's campus is a teaching hospital for Cornell University College of Veterinary Medicine's zoological medicine program.

The Supreme Court was clear that a state may lawfully prohibit firearms at "schools and government buildings." *See D.C. v. Heller*, 554 U.S. 570, 626 (2008) ("nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms . . . in sensitive places such as schools and government buildings").[11]

Respectfully, the District Court erred in failing to consider Chief Cecile's meritorious argument.

---

[11] The district court inasmuch agreed in its Decision and Temporary Restraining Order that it was permissible for the CCIA to restrict concealed carry—based on the *Heller* decision—pursuant to paragraph 2(f) of Section 4 at "any building or grounds, owned or leased, of any educational institutions, [or] colleges and universities . . ." However, the district court did not address this in the Decision and Preliminary Injunction due to the Plaintiff Leman's and Mann's lack of standing to raise the issue as to the constitutionality of the same provision.

### C.     Chief Cecile Adopts the Arguments Raised by the State Defendants

Chief Cecile's opposition to Plaintiffs' Motion focused on Plaintiff Johnson's tenuous connection with the City and acknowledged that the State Defendants were better positioned to argue the constitutionality of the CCIA, particularly in the likelihood of success analysis. In accordance with Rule 28 of the Federal Rules of Appellate Procedure, Chief Cecile respectfully adopts the arguments raised in the State Defendants' Appellate Brief concerning the constitutionality of the CCIA. Fed. R. App. P. 28(i).

### IV.    The Trial Court Erred in Finding the Balance of Equities and Service of Public Interest Favor Plaintiffs

As with all requirements for a preliminary injunction, Plaintiffs bear the burden of demonstrating that the balance of equities and the public interest weighs in their favor. *See We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) (noting that "[w]hen the government is a party to the suit, our inquiries into the public interest and the balance of the equities merge"). Plaintiffs failed to satisfy this burden as to Chief Cecile.

As previously stated, Plaintiff Johnson is the only plaintiff to assert a connection with the City. Plaintiff Johnson, however, did not claim to be a resident of the City or even a frequent visitor. Indeed, Plaintiff Johnson identifies the Rosamond Zoo as the sole location in the City that he intends to visit at some point in the future, and then only once or twice. JA139. Again, the Zoo is not City owned

24

rendering it unlikely that SPD would be involved in any alleged violation of the CCIA at the Zoo.

Respectfully, Plaintiff Johnson's lack of standing, tenuous City connection and the speculative nature of the future harm he may incur at a County-owned facility in the City are dwarfed by the City's imperative to protect all of its citizens – an imperative that has been impeded by the proliferation of guns in the City and ever-changing gun laws. A preliminary injunction only adds to the confusion and further hinder Chief Cecile's compelling need to protect all of the City's residents.

## CONCLUSION

For the foregoing reasons, Chief Cecile respectfully submits that the District Court's Decision and Preliminary Injunction (SA1-184) should be reversed.

Dated: January 9, 2023

Respectfully Submitted,

SUSAN R. KATZOFF, ESQ.
Corporation Counsel
300 City Hall
Syracuse, New York 13202

_____

Todd M. Long, Esq.
Danielle R. Smith, Esq.

*Attorneys for Joseph Cecile, Defendant-Appellant*

25

# CERTIFICATE OF COMPLIANCE

This brief complies with the typeface and type-volume limitations of Federal Rule of Appellate Procedure 32(a)(5), Federal Rule of Appellate Procedure 32(a)(7) and Local Rule 32.1(a)(4)(A) because this brief is in 14-Point Times New Roman and contains 6,099 number of words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Dated: January 9, 2023

SUSAN R. KATZOFF, ESQ.
Corporation Counsel
300 City Hall
Syracuse, New York 13202

_____
Todd M. Long, Esq.

*Attorneys for Joseph Cecile, Defendant-Appellant*